1

2

3

4

5

6

7        IN THE UNITED STATES DISTRICT COURT

8        FOR THE WESTERN DISTRICT OF WASHINGTON
         AT SEATTLE

9

10   LISA HOOPER, BRANDIE OSBORNE,               No.
     individually and on behalf of a class of
     similarly situated individuals; THE        COMPLAINT—CLASS ACTION FOR
11   EPISCOPAL DIOCESE OF OLYMPIA;              DECLARATORY AND INJUNCTIVE
     REAL CHANGE,                                RELIEF

12              Plaintiffs,

13          vs.

14   CITY OF SEATTLE, WASHINGTON;
     WASHINGTON STATE DEPARTMENT OF
15   TRANSPORTATION; ROGER MILLAR,
     SECRETARY OF TRANSPORTATION FOR
16   WSDOT, in his official capacity,

17              Defendants.

18

19

20

21

22

23

24

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND                    **CORR CRONIN MICHELSON**
INJUNCTIVE RELIEF                                             **BAUMGARDNER FOGG & MOORE LLP**
                                                             1001 Fourth Avenue, Suite 3900
                                                             Seattle, Washington 98154-1051
                                                             Tel (206) 625-8600
                                                             Fax (206) 625-0900

1

## I.   INTRODUCTION

2       1.      Plaintiffs Lisa Hooper, Brandie Osborne, the Episcopal Diocese of Olympia,

3   and Real Change, by and through counsel, bring this class action challenging the ongoing

4   policy and practice of the City of Seattle (the "City") and the Washington State Department of

5   Transportation ("WSDOT") (together the "Defendants") of seizing and destroying the

6   property of people who are living outside without adequate and effective notice, an

7   opportunity to be heard, or a meaningful way to reclaim any property that was not destroyed.

8   This practice is commonly referred to as "sweeping" or "sweeps."[1]

9       2.      Each year, more and more City of Seattle residents are forced to live outside on

10  public property.   According to the Seattle/King County Coalition on Homelessness

11  ("SKCCH"), on a given night in January 2016, more than 2,942 Seattle residents were found

12  trying to survive one of the coldest months of the year outdoors.   Of this population,

13  approximately 900 had a vehicle to sleep in, leaving roughly 2,000 Seattle residents with no

14  shelter but what they could build for themselves or find in the form of existing structures,

15  such as under roadways.

16      3.      Pursuant to official policies and longstanding practice sanctioned by their

17  policymakers, Defendants have embarked upon a program of seizing and destroying the

18  property of people living outside, in a process referred to as "sweeps, "or "clean ups."

19  Defendants conducted more than 1000 of these sweeps in the past two years alone.

20      4.      These sweeps target Plaintiffs and the communities in which they live.

21      5.      Pursuant to these policies and practices, Defendants remove and destroy

22  peoples' property without a warrant, probable cause, adequate notice, an ability to be heard,

23  or a meaningful opportunity for people to retrieve their possessions.

24

---

[1] "Sweeping" or "sweeps" refers to Defendants' act of removing and/or destroying the property of
people who live outside.

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 1

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1        6.       Defendants' actions deprive people living outside of personal belongings that

2    are critical to their survival, such as: clothing, tents, cooking utensils, and medication;

3    important personal possessions, such as identification documents; tools necessary for their

4    profession; and irreplaceable mementos, including family photographs and heirlooms.

5        7.       For example, Plaintiff Lisa Hooper has suffered the loss of irreplaceable family

6    photos and mementoes, important legal paperwork, a mattress, clothing, and several shoes—

7    leaving her without a matching pair—because of previous sweeps conducted by Defendants

8    pursuant to a policy with no end in sight.

9        8.       The consequences are devastating.  Defendants' conduct leaves an already

10   vulnerable population at imminent and significantly increased risk of harm from exposure and

11   want.  It makes it more difficult for people living outside to break out of the cycle of

12   homelessness, as time they could spend looking for employment or taking care of their affairs

13   is by necessity spent instead on replacing essential items like identification and bedding.  And

14   it takes a substantial emotional toll.

15       9.       Plaintiffs live in constant fear that their few remaining possessions will be

16   seized by Defendants, who have publicly committed to continuing their on-going policies and

17   practices.

18       10.      Defendants' policies and practices are not only unnecessarily cruel, they are

19   also illegal: they violate Plaintiffs' (1) right to protection from unreasonable search and

20   seizure under the Fourth Amendment of the U.S. Constitution; (2) right to protection from

21   invasion of homes and privacy under Article I, Section 7 of the Washington State

22   Constitution; (3) right to procedural due process under the Fourteenth Amendment of the U.S.

23   Constitution; and (4) right to procedural due process under Article I, Section 3 of the

24   Washington State Constitution.

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 2

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

11.     Plaintiffs seek a declaratory judgment that Defendants' policy and practice of confiscating and/or destroying the personal property of people living outside without a warrant, probable cause, an opportunity to be heard, a meaningful opportunity to reclaim property, and/or requisite procedural due process is unlawful under the federal and state constitutions.

12.     Plaintiffs also seek appropriate injunctive relief enjoining Defendants' use of sweeps until Defendants adopt and implement procedures that respect Plaintiffs' constitutional rights.

13.     If Defendants insist upon seizing and destroying personal property, Plaintiffs— like all property owners in this country—have a right to adequate and effective notice and an opportunity to be heard before their property is taken by the government.  These rights are not implicated by policies and procedures that provide true "clean up" services, such as regularly scheduled garbage pickups from designated garbage bins (like those provided to other City residents) that do not involve the seizure and destruction of personal property.

14.     Plaintiffs have no adequate remedy at law and are at imminent risk of subsequent rights violations.  Defendants know or should know that their actions violate the constitutional rights of people living outside, but have made it clear they intend to continue the unlawful conduct described herein.

## II.     JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1343(a)(3).  Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201-2202.

16.     This Court has supplemental jurisdiction over Plaintiffs' claims for violation of the Washington State Constitution pursuant to 28 U.S.C. § 1367. Venue is appropriate in this

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 3

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   District because all parties reside or are present in, and the causes of action occurred in the

2   Western District of Washington.  28 U.S.C. § 1391(b).

### III.   PARTIES

**A.   Individual Plaintiffs**

5       17.     Plaintiff Lisa Hooper is unhoused and lives outside in Seattle, Washington, on

6   the hill on the west side of Rainier Avenue South near I-90.  Ms. Hooper has lived outside in

7   that location for approximately two years, and maintains a home with her male partner.  Ms.

8   Hooper and her partner will continue to live outside for the foreseeable future.

9       18.     Defendants have conducted multiple sweeps where Ms. Hooper and her partner

10  live.  Defendants have, on a number of occasions, conducted sweeps of the area without

11  notice.  Ms. Hooper has had many of her possessions confiscated and/or destroyed during

12  Defendants' sweeps.

13      19.     For example, during a sweep in May of 2015, Defendants gave Ms. Hooper

14  minimal to no notice, forcing her to scramble to pack up her entire home and quickly

15  determine which items were absolutely necessary for survival to take with her, and which she

16  had to leave.  Defendants seized and/or destroyed the property Ms. Hooper was forced to

17  leave behind, including the only photos she had of her three daughters, her children's baby

18  teeth that she had been saving for about 20 years, important legal paperwork, a mattress,

19  clothing, matching shoes, antibiotics, and a family Bible that had information on her family

20  history going many generations back, among other items.

21      20.     Having to repeatedly and on short or no notice move all her belongings to

22  avoid their confiscation and destruction has imposed significant hardship upon Ms. Hooper

23  and limits her ability to be away from her property to deal with personal affairs for fear that

24  the property will have been seized by Defendants in her absence.

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 4

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    21.    Defendants' refusal to provide effective and adequate notice has left Ms.

2    Hooper with great uncertainty as to where it is safe to live and keep her belongings.  For

3    example, in January 2017, WSDOT and City personnel conducted a sweep of the area where

4    Ms. Hooper and her partner live.  Defendants posted no prior notice in the area, posting only a

5    single notice far north of where Ms. Hooper lived.  WSDOT then cleared only part of the area

6    the notice described, and refused to provide information about whether and/or when the area

7    she lived in would be swept.

8    22.    Ms. Hooper lives in constant fear that she will lose her home and everything

9    she owns in one of Defendants' future sweeps.

10    23.    Plaintiff Brandie Osborne is unhoused and lives outside in Seattle,

11    Washington, up the hill from the intersection of Dearborn Street and the ramp to I-5 North.

12    Ms. Osborne has lived there for approximately one year and a half.  Ms. Osborne will

13    continue to live outside for the foreseeable future.

14    24.    Defendants have conducted roughly four sweeps where Ms. Osborne lives.

15    Defendants have, on a number of occasions, conducted sweeps of the area without notice.

16    Ms. Osborne has had possessions confiscated and/or destroyed during these sweeps.

17    25.    Because Ms. Osborne has had minimal to no notice of Defendants' sweeps, she

18    has had to scramble to pack up her entire home and quickly determine which items were

19    absolutely necessary for survival to take with her, and which she had to leave.  Defendants

20    seized and/or destroyed the property she was forced to leave behind, including important

21    personal property like clothing, tarps, and batteries.  Ms. Osborne's tent was also damaged

22    beyond repair after having to move it so many times.

23    26.    Having to repeatedly move all of her belongings to avoid their confiscation and

24    destruction has imposed significant hardship on Ms. Osborne, and limits her ability to be

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 5

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

away from her property to deal with personal affairs for fear that the property will have been seized by Defendants in her absence.

27.     Defendants' refusal to provide effective and adequate notice has also left Ms. Osborne with great uncertainty as to where it is safe to live and keep her belongings.  For example, in December of 2016, WSDOT provided notice of a sweep that would affect the area where she lives.  Ms. Osborne, with the assistance of her neighbors and volunteers, moved most of her belongings.  WSDOT then cleared only part of the area the notice described, not including the area where Ms. Osborne lived, and refused to provide information about whether and/or when the area she lived in would itself be swept.

28.     Over the Martin Luther King holiday weekend in January 2017, Ms. Osborne saw a notice that the location of her home may be swept on January 19, 2017.

29.     Ms. Osborne lives in constant fear that she will lose her home and everything she owns in one of Defendants' future sweeps.

30.     Plaintiffs bring this suit on behalf of themselves and all other similarly situated unhoused persons who live outside.[2]

**B.     Organizational Plaintiffs**

31.     Plaintiff Diocese of Olympia is a diocese of The Episcopal Church in Washington State.  It is comprised of "more than 26,000 Episcopalians in more than 100 worshiping communities throughout Western Washington."  Diocese congregations include numerous members who are unhoused.  The mission of the Diocese of Olympia is to "build strong communities of faith."  To accomplish its mission, among other things, the Diocese of Olympia assists congregations with their development and work, including strengthening the

---

[2] "Unhoused" refers to all individuals who lack fixed, stable, or adequate shelter or housing.  While the term "homeless" is often utilized to refer to this population, we use the term "unhoused" because people who lack permanent or stable housing still have homes in which they sleep and go about their private affairs.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF - 6

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

stewardship of available resources.  For example, the Diocese offers training, grants, resources, and other programs to its member churches.

32.     There are a number of churches in the City of Seattle that are members of the Episcopal Diocese, including St. Luke's Episcopal Church and Trinity Parish of Seattle. Many of these churches, as an integral part of their mission and ministry, provide services to unhoused people in Seattle.

33.     For example, St. Luke's Episcopal Church in Ballard operates a Meals Ministry called Edible Hope, wherein the church and its congregation serve a hot breakfast five days a week to approximately 150-180 people each day, 90 to 95 percent of whom are homeless.  The church also co-sponsors a program called the Bridge Drop In which offers a number of drop in services to unhoused individuals, including counseling, and stations for people to charge their electronics, and operates a shelter on site.

34.     The confiscation and destruction of the belongings of people living outside has affected the church's operation in a number of ways.  Since Defendants have increased their use of sweeps, the church has had significantly more unhoused people needing its meal and Bridge Drop In services.  This increased demand has put additional burden on the church's facilities, and required significant additional church resources.  The church is also affected by Defendants' actions through its membership: approximately 20 percent of the church's congregation is unhoused.

35.     Trinity Parish of Seattle is also a member of the Diocese of Olympia.  As a part of its mission, Trinity Parish offers a number of services for unhoused individuals in Seattle, including a food bank and thrift shop in First Hill.  The food bank, operated by Northwest Harvest, but located at Trinity Parish, provides food three days a week to residents in need, with approximately 3,000-5,000 instances of giving food each week.  Many people living

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 7

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

outside in the area depend on this food bank to survive.  Trinity Parish also operates a Thrift Store, and a voucher program for the store wherein people can get clothing and other items they might need, like blankets or coats to survive the cold weather for free.  Trinity is near an encampment area that is swept frequently, and a number of those residents utilize Trinity's services.  Trinity has reason to believe that items it has provided to the unhoused have been seized and destroyed by Defendants.

36.     Plaintiff Real Change exists to provide opportunity and a voice for low-income and unhoused people while taking action for economic, social and racial justice.  Tim Harris founded Real Change in 1994 and has served as its director since.  Real Change's mission is to offer immediate employment options for the poor and unhoused and challenge the structures that create poverty.  Real Change publishes a weekly newspaper of the same name that provides employment to about 800 poor and unhoused people annually, who sell the papers throughout the greater Seattle area.  At any given time, about half of Real Change's vendors are unhoused, and one-third of Real Change's vendors live outside, many in greenbelts and other encampments throughout the City.  The employment that Real Change provides to unhoused people, including those living outside, gives them the income they need to buy food, medicines, clothes, sleeping bags, tents, and other necessaries.

37.     Many of the unhoused vendors living outside who work for Real Change have been victimized by Defendants' sweeps, which have seized and destroyed valuables like sleeping bags, medicines, and clothing—items that were purchased with the income they earned as Real Change newspaper vendors.  City and WSDOT employees have also seized and destroyed irreplaceable mementos and photographs belonging to Real Change vendors, essential identification papers, and the Real Change newspapers that provide the basis of their income.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 8

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    38.    Defendants' actions have severely disrupted the lives of Real Change vendors,

2    who are unable to sell papers and earn an income after their property is seized and destroyed

3    because they must instead devote their time to replacing lost articles.  As a result, some

4    vendors have become unable to work for Real Change, which reduces the organization's

5    presence on the streets and negatively impacts its fulfillment of its mission, and deprives the

6    vendors of much needed income.

7    39.    To allay the disruption and dislocation that Real Change vendors have suffered

8    and will continue to suffer as a result of Defendants' sweeps, Real Change staff collects

9    replacement sleeping bags, coats, and other necessities to give to those Real Change vendors

10   whose property has been seized by Defendants.  Real Change staff also helps those impacted

11   by the sweeps by connecting them to social service organizations that can help them replace

12   lost identification and other essential paperwork.  Real Change also assists its unhoused

13   vendors living outside who are caught up in sweeps by providing them access to community

14   space where they receive emotional and physical support from other vendors, and to

15   computers where they can begin the process of replacing their identification and other

16   documents.

17   40.    Real Change has been impacted by Defendants' actions both by and through its

18   vendors and because it has had to divert organizational resources as a result of Defendants'

19   sweeps.

20   **C.**    **Defendants**

21   41.    Defendant City of Seattle is a political subdivision and municipal corporation

22   organized under the laws of the State of Washington.  The City is a legal entity with the

23   capacity to sue and be sued.  The City of Seattle is sued in its own right and on the basis of the

24

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 9

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    acts or omissions of its officials, agents, and employees who were following the City's

2    policies.

3         42.     Defendant Washington State Department of Transportation is an agency and

4    instrumentality of the State of Washington.

5         43.     Defendant Roger Millar is the Secretary of Transportation for WSDOT.

6    Defendant Millar is responsible for implementing and carrying out WSDOT's programs and

7    policies and is joined to this action in his official capacity only.

8              **IV.      CLASS ACTION ALLEGATIONS**

9         44.     Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), the named Plaintiffs bring this

10   action individually and on behalf of all other persons similarly situated. The proposed

11   Plaintiff Class consists of

12          All unhoused persons who live outside within the City of Seattle, Washington and
            who keep their belongings on public property.

13        45.     The requirements of Rule 23(a) are met because the members of the proposed

14   Plaintiff Class are so numerous that joinder is impracticable; there are questions of law and

15   fact common to all members of the proposed Plaintiff Class; the claims of the named

16   Plaintiffs are typical of those of the proposed class members; and the named Plaintiffs will

17   fairly and adequately protect the interests of the proposed Plaintiff Class.

18        46.     The defined class is so numerous that joinder of all plaintiffs is impracticable.

19   While it is impossible to know the exact number of people living outside in the City of

20   Seattle, the Seattle/King County Coalition on Homelessness found that on a given night, in

21   January 2016, at least 2,000 individuals were sleeping outside within the City limits.  Even

22   more individuals cycle through emergency and temporary shelters and may find themselves

23   temporarily living outside.  Further, in part due to Defendants' practices and policies, the

24

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 10

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  population of people living outside is transient, making it difficult to find and identify all class

2  members individually.

3       47.    There are questions of law and fact common to the class. These include:

4             a.  Whether Defendants have a practice and policy of seizing and destroying

5             the personal property of people living outside without a warrant, probable

6             cause, adequate notice, an opportunity to have a meaningful pre- or post-

7             deprivation hearing, or an opportunity to retrieve vital personal property before

8             its seizure or destruction;

9             b.  Whether Defendants' custom, policy, or practice violates Plaintiffs'

10            constitutional rights against unreasonable search and seizures under the Fourth

11            Amendment of the U.S. Constitution;

12            c.  Whether Defendants' custom, policy, or practice violates class members'

13            right to privacy under Article I, Section 7 of the Washington State

14            Constitution;

15            d.  Whether Defendants' custom, policy, or practice violates class members'

16            constitutional rights to procedural due process under the Fourteenth

17            Amendment of U.S. Constitution; and

18            e.  Whether Defendants' custom, policy, or practice violates class members'

19            constitutional rights to procedural due process under Article I, Section 3 of the

20            Washington State Constitution.

21       48.    The claims of the named Plaintiffs are typical of the claims of the Class. The

22  named Plaintiffs' claims arise from the same conduct—Defendants' sweeps—that gives rise

23  to the absent members' claims, and the declaratory and injunctive relief requested applies

24  equally to all members of the Class.

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 11

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

49.     The named Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs seek to ensure that Defendants respect the constitutional rights of all people who live outside and/or maintain their belongings on public property. The relief they seek will benefit all members of the class. The named Plaintiffs have no interests antagonistic to the interests of the Class.

50.     Plaintiffs are represented by the ACLU of Washington, which has extensive experience in civil-rights and class-action litigation and has sufficient resources to diligently prosecute the claims of the class.  Plaintiffs are also represented by the law firm of Corr Cronin Michelson Baumgardner Fogg & Moore LLP.

51.     Class certification is proper under Rule 23(b)(2). Defendants have acted in an unlawful manner generally applicable to all proposed Plaintiff Class members by conducting sweeps of areas where people living outside reside without a warrant, probable cause, adequate and effective notice, an opportunity to be heard, or a meaningful opportunity to retrieve belongings.  Defendants' unlawful acts have caused irreparable injury to Plaintiffs and the Class including but not limited to the loss of property and emotional damage, and placed Plaintiffs and the Class at imminent risk of further such injury.   Injunctive and declaratory relief with respect to the entire class is therefore appropriate.

## V.     FACTUAL ALLEGATIONS

### A.     The City's Homeless Population

52.     On November 2, 2015, the City of Seattle Mayor, Edward Murray, declared a State of Emergency ("Declaration") on homelessness, seeking outside assistance to deal with the alarming number of Seattle residents living without fixed, regular, or adequate housing. Since the Mayor's Declaration, the number of people living outside in the City has only increased.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 12

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

53.     On January 29, 2016, SKCCH counted approximately 2,942 Seattle residents sleeping and living outside.  An estimated 914 of these individuals were found trying to survive the harsh January weather in a car or truck.  Shelter for the remaining 2,028 consisted of that which they built for themselves or could find in the form of existing structures such as under roadways.  These numbers are always assumed to be an undercount, as they do not include those who have taken great care to stay out of sight, as well those living in encampments SKCCH deemed unsuitable for volunteers to count and other spaces volunteers simply did not get to.

54.     Unhoused Seattle residents who live outside have homes.  They look different than brick and mortar houses but serve the same purposes.  They are often made of tents, tarps, blankets, poles, and other materials to create safe, dry, insulated, and private shelter.  And, like everyone else's homes, they contain the owner's possessions.  These belongings are often critical to survival or of particular psychological value, including medication, hearing aids, respirators, wheelchairs, and canes; blankets, a sleeping bag, or clothing to stay warm; tents or tarps to provide shelter; cookware, eating utensils, and food; identification, immigration, or court documents; bikes or other modes of transportation; work tools; schoolbooks and materials; and family photos and mementos.

55.     People living outside frequently build their homes on public property and in areas that provides some shelter from the elements, such as under bridges or roadways, and offer some privacy from the public to keep themselves and their possessions safe.  Many live near and among other people, in communities, much as those who live in houses do.  These communities (often referred to as encampments) offer an increased sense of safety, community, and stability.  In fact, individuals living outside frequently stay in their place of residency for many months, or even years.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 13

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

56.     These communities also provide the unhoused with a place to leave their belongings while they go about their daily lives.  Like all members of society, people living outside have personal and business affairs to attend to during the day, including working or searching for employment; attending school; visiting lawyers, doctors, social workers, or other service providers; and obtaining food, clean water, and other necessities of survival. Having a stable place to live and store belongings makes it easier for people living outside to find a job and obtain employment, and meet with service providers to take the requisite steps to secure more permanent housing.

57.     Like all people, those living outside also generate waste and garbage.  The City provides containers for disposal, regularly scheduled garbage pickup, and a sewer system for those living in houses, but people living outside often have no option other than to place their garbage near their homes.  In areas where multiple people live, this garbage accumulates more quickly.

**B.      Defendants Have An Ongoing Policy and Practice of Sweeping Unhoused People and Their Possessions from Public Property**

58.     As an integral part of its strategy to address homelessness, Defendants have a longstanding and ongoing policy and practice of conducting sweeps of people living outside. Defendants often refer to this conduct as "cleanups" of "unauthorized," "unsanctioned," or "illegal" encampments.  Defendants claim the sweeps are necessary to ensure that public property is used as it was intended to be used, and/or that sweeps are necessary for the public health and safety of both Seattle's housed and unhoused residents.   Defendants have additionally asserted that these sweeps will help connect people living outside with the services they need to get off the streets.

59.     The reality is that these sweeps are conducted in a manner that violates Plaintiffs' constitutional rights and causes them irreparable harm.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 14

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

60.     Defendants' sweeps target only areas in which unhoused people have built their homes and maintain their possessions, not any public property where garbage, waste, or hazardous materials have accumulated.

61.     In fact, housed Seattle residents are encouraged to report unauthorized encampments to the City, either online, via phone, or through the City's "Find It, Fix It" phone app.  WSDOT additionally receives and responds to complaints regarding use of its public property by unhoused individuals.

62.     Defendants are deeply committed to conducting these sweeps, sharply increasing the number of sweeps conducted in the last several years. In 2012, Defendants conducted 80 sweeps of people living outside and their belongings; in 2014, Defendants conducted 351 sweeps, exceeding any prior year on record.  Defendants' use of sweeps has only continued to grow—in 2015, Defendants conducted more than 500 sweeps.  Since the City's Declaration on November 2, 2015, Defendants have conducted approximately 600 sweeps, averaging nearly eleven a week.

63.     Defendants have devoted significant money, resources, and time to planning and conducting these sweeps.  Approximately one third of the more than $7 million the City secured as a result of its State of Emergency Declaration was spent removing the homes of people living outside and seizing and destroying their property.  WSDOT has also devoted considerable resources on sweeps, noting it spends approximately $250,000 a year removing unhoused people's property in recent years and calling its activities "evictions."

64.     The sweeps are carried out by the City and/or WSDOT personnel, overseen by City and/or WSDOT personnel, and conducted pursuant to policies approved by Defendants' most senior decision makers.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 15

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**C.**   **Defendants' Official Policies Governing Sweeps are Unconstitutional**

65.     In 2008, shortly after a WSDOT contractor killed a man with a brush cleaning tractor during a sweep, Defendants adopted official policies and guidelines to govern sweeps of areas where people live outside on public property.   The City promulgated the Multi-Departmental Administrative Rules 08-01 ("MDAR"), and WSDOT adopted the "Guidelines to Address Illegal Encampments" ("WSDOT Guidelines").

66.     Both the MDAR and the WSDOT Guidelines are still in effect and constitute Defendants' only known official published policies pertaining directly to sweeps.

67.     Although Defendants may have modified some of their regulations, these modifications have not been formally adopted, are not enforceable, and are subject to inconsistent implementation at best.

68.     Although the MDAR and WSDOT Guidelines purport to offer more procedural safeguards than previously existed, they were largely intended to address the patchwork system of rules and agencies previously responsible for the sweeps, and do not ensure that sweeps are conducted in compliance with the constitution.

69.     Even if Defendants' sweeps were conducted fully in accordance with both the MDAR and the WSDOT Guidelines, they would still be unconstitutional.

**1.     Defendants' Official Policies Fail to Provide for Adequate and Effective Notice**

70.     Both the MDAR and the WSDOT Guidelines lack sufficient requirements for notice to protect the rights of unhoused residents living outside in Seattle.   Although both require 72-hour notice prior to the removal of property and storage of such property for 60 days (MDAR) or 70 days (WSDOT Guidelines), the requirements are so filled with exceptions and exclusions as to make them meaningless.   The requirements exempt many, if not most, people living outside from even the most minimal of notice protections.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 16

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

71.     For example, the notice requirements under the MDAR apply only to "encampments," defined as three or more or more unauthorized structures within an identifiable area or within 300 feet of another encampment.  This means that under its own rules, the City does not have to provide any notice to individuals camping alone or in pairs or to those who do not live in structures (like tents or lean-tos) before seizing and destroying all of their possessions.

72.     The notice requirements of the MDAR additionally do not apply to "recurring encampments," which are sites where an encampment has been observed three or more times within any 60 day period.  This exception essentially excludes all long-term encampments from any notice requirement before all of the residents' property is seized and destroyed, as long as notice had at some point since 2008 been posted for the encampment.  This exception applies even if none of the current residents lived there within the prior 60 days, or were otherwise unaware that a notice for the area had been posted at some point within the last 8 years.

73.     In these situations, the City's own written policy also does not require it to provide any storage of any property seized during the sweep unless the property has the name of the owner on it, and is valued at over $100.  The determination of value is made on the spot by Defendants' employees and is not appealable.  This provision authorizes the City to immediately remove and discard any other property on site.

74.     The exceptions to Defendants' rules on their face make it impossible for people living outside to safely live and store their belongings without constant risk that everything will be taken from them with no notice.

75.     Defendants have conducted over 1000 sweeps in the City in the past two years alone in neighborhoods across Seattle.  If an unhoused person living outside happens to have

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 17

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    their home in or within 300 feet one of those encampments, they are not entitled to any notice
2    under the MDAR before their property is taken and destroyed.  But neither can an individual
3    move their home away from an encampment to protect their property from seizure because
4    the MDAR does not require notice or storage for property not within an encampment.

5          76.    The WSDOT Guidelines include just as many exceptions to the notice
6    requirement, allowing WSDOT to justify the immediate removal of property where it is not
7    "practical" or "feasible" to post notice because of "[c]rew scheduling, emergency repairs and
8    removal of nuisances," or other situations "where the maintenance activity cannot wait or be
9    predicted."  In addition, the Guidelines specify that "[s]ites where maintenance occurs on a
10   frequent but random basis will be posted 'No Trespassing,'" implying that in such cases, no
11   72-hour notices will be posted.  The Guidelines also exclude recurring encampments from
12   notice protections, providing that previously cleared encampment sites will be revisited by
13   WSDOT and, if encampments are again found, "No Trespassing" signs will be posted "and
14   removal efforts may proceed without 72 hour notification."

15         77.    Further, both the MDAR and the WSDOT Guidelines lack notice requirements
16   to ensure that notice is actually effective.

17         78.    The City's policymakers have themselves noted that the notices are difficult to
18   understand; one councilmember stated, "I can barely understand these postings, and I have a
19   law degree."

20         79.    Neither the MDAR nor the WSDOT Guidelines take into account people with
21   limited English proficiency, limited literacy, or disabilities (such as blindness).

22         80.    Neither the MDAR nor the WSDOT Guidelines require Defendants to actually
23   conduct the sweep on any particular date or time, including that which is stated in the notice;

24

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 18

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

or to update the notice if they cancel, prolong, put off the sweep, or limit it to a different area than posted.

81.     Neither the MDAR nor the WSDOT Guidelines provide for any training to Defendants' employees and staff as to what constitutes constitutionally adequate and effective notice or how to provide such notice.

82.     In fact, both the MDAR and the Guidelines explicitly contemplate uneven and unpredictable enforcement.  For example, the Guidelines are not binding on WSDOT crews:

> These Guidelines form the basis for WSDOT work on state-owned right of way, and will be revised as necessary to meet the current situation and to reflect the available resources, including budget and staffing. Each Region may exercise its discretion to deviate from these Guidelines if the Region determines that coordination with a local jurisdiction on a specific clean-up activity is the best course of action under the circumstances. However, the activity shall be at least as effective as the provisions contained in these Guidelines.

Similarly, the implementation and enforcement of the MDAR are solely at the discretion of the Executive, enabling vast deviation from the rules without consequence.

83.     These various deficiencies, when coupled with Defendants' actual practice and policy discussed *infra*, make it impossible to predict when a sweep will occur and renders any notices that are posted meaningless.

**2.     Defendants' Official Policies Fail to Provide Constitutionally Required Due Process**

84.     The MDAR and WSDOT Guidelines similarly lack provisions to ensure pre- or post-deprivation due process.  Once a sweep has begun, the MDAR and WSDOT Guidelines only require Defendants to store property that Defendants unilaterally determine fits within an enumerated list or are of a particular value, enabling the destruction of countless items that are necessary for unsheltered people's survival and daily activities, or are otherwise of significant personal value.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 19

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

85.     Although the MDAR requires the storage of personal property, personal property is limited to items which have "apparent utility," are defined by example, or "have a reasonable value of more than $25." The MDAR does not consider building materials to be personal property, nor items that are "hazardous," which can include items that are wet or muddy because they are kept outside.

86.     The WSDOT Guidelines similarly define personal property by example, and provide minimal criteria for determining whether an item should be stored.

87.     As a result, City and WSDOT personnel have almost complete discretion to determine whether an item should be stored, regardless of its worth, necessity, or significance to its owner.

88.     Even if property is stored, neither regulation ensures that people have any meaningful opportunity to retrieve their seized property. Neither contains requirements for property storage that assure storage facilities are in accessible locations or open at regular hours and neither requires Defendants to adequately notify owners as to how to reclaim their belongings.

89.     Neither the MDAR nor the Guidelines contemplate that compensation will be paid to people to replace property seized and/or destroyed during the sweeps.

90.     Neither the MDAR nor the Guidelines require adequate training for Defendants' personnel on the procedural due process rights implicated by government seizure of personal property.

D.     **Defendants' Actual Practice of Conducting Sweeps Violates Both Their Own Rules and the U.S. and Washington State Constitutions**

91.     Not only are Defendants' official policies unconstitutional as written, but Defendants have conducted and approved of longstanding and ongoing practices that violate

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 20

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    even the most basic portions of their own rules, along with the U.S. and Washington State

2    constitutions.

3        92.    Even if Defendants were to adopt official policies and procedures that comply

4    with the constitutional rights of Seattle residents living outside, there is no guarantee that

5    Defendants would follow them absent a court order.

6        93.    For decades—and in the 8 years since the MDAR and WSDOT Guidelines

7    were adopted—Defendants have conducted sweeps sporadically, unpredictably, and with utter

8    disregard of even their own (wholly inadequate) regulations.  In the hundreds if not thousands

9    of sweeps conducted by Defendants across the City in recent years, they have failed to follow

10   any consistent procedure with regards to notice to people living outside of impending sweeps,

11   the disposal or storage of seized property, or the opportunity for people to reclaim their

12   belongings.

13       94.    Although each sweep is different, the following policy and practice has been

14   implemented on multiple occasions since November 2, 2015 and is ongoing:

15       95.    Prior to conducting a sweep, Defendants target areas where people living

16   outside have set up homes and communities.  Defendants frequently refer to these sweeps as

17   "clean ups"—implying that their goal is to merely clear the area of trash, debris, waste, and/or

18   other hazardous materials—but target only these areas.

19       96.    Although Defendants' target particular areas, their officially sanctioned

20   practices are wholly ineffective at providing constitutionally adequate notice before a sweep

21   occurs.

22       97.    Even when Defendants do provide some form of notice, it is typically

23   inadequate, inconsistent, inaccurate, inaccessible, and/or misleading—rendering every notice

24   constructively ineffective.

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 21

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

98.     Notice of a sweep is often provided less than 72 hours in advance, and sometimes even after the fact, depriving people living in the area of any meaningful opportunity to make other arrangements for their belongings.

99.     Notice is frequently only posted in inconspicuous areas that people living outside do not actually walk past or cannot easily see.

100.    Notice frequently neglects to specify exactly where a sweep will occur—listing merely a single street name with no cross street boundaries or other descriptors.

101.    Although notice is sometimes attached to individual tents, it is just as often posted to trees, fences, or other structures on the border of an area to be swept.  This inconsistency leaves unhoused people with no idea of the type of notice to expect, if any, before their property will be seized and destroyed by Defendants.

102.    Many of the notices merely state that property will be seized after 72 hours, without specifying a date or time.

103.    Regardless of the dates on a posted notice, sweeps are often conducted at widely varying intervals after the notices are posted.

104.    By way of example, this photo was taken of a notice posted on a tree, allegedly on December 27, 2016.  It offers no description of the actual area to be swept, nor a time when it was posted.

///

///

///

///

///

///

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 22

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21

22    105.    Even signs that do provide more specific information, such as a date and time,

23  often provide inconsistent information, such as days of the week that do not correspond to the

24  dates listed.

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 23

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

106.    By way of example, this photo was taken of a notice allegedly provided before

2    a sweep in September of 2016.



107.    Sweeps are routinely conducted at different dates and times than those

indicated on the notice.

108.    Thus, even when Defendants have provided some sort of notice, residents do

not receive actual and effective notice as required by the Constitution because they still do not

know whether or when a sweep will actually occur.  Defendants have functionally deprived

Plaintiffs of notice altogether.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 24

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

109.   Defendants make minimal to no accommodations to reach people who cannot read English—people who are also constitutionally entitled to notice.   Notice is only occasionally provided in Spanish (WSDOT provided notices generally include both; City provided notices are frequently in English only) and is generally only given in written format. People who do not speak English or Spanish, who are blind, who cannot read, and who may have other cognitive disabilities or mental illnesses that make written notice difficult to fully comprehend are deprived of notice.

110.   Further, because minimal justification is proffered by Defendants prior to conducting a sweep, it is impossible for Plaintiffs even to guess whether their homes will be targeted.   Defendants have conducted sweeps in clean and well-maintained encampments, as well as encampments of the type they promised would not be swept.   Some encampments have been swept multiple times; others' homes have presumably never been touched.

111.   Plaintiffs' constitutional rights are implicated because Defendants' "clean up" strategy does not entail merely disposing of trash, debris, waste, and/or hazardous materials, or taking affirmative government action to resolve the safety or public health risk allegedly posed by the residents, such as by providing portable restrooms or garbage disposal services.

112.   Instead, Defendants' "clean up" strategy is to seize and destroy the possessions of people who live outside.

113.   Defendants often clear entire sites, indiscriminately removing the visible property and personal belongings either by hand or with heavy machinery like bulldozers and backhoes.

114.   When a bulldozer or backhoe is used, the property is immediately destroyed. By way of example, the picture below was taken on September 14, 2016 at one of Defendants' sweeps conducted at the location where Plaintiff Hooper lives.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 25

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



115. In addition to using heavy machinery, Defendants sometimes physically destroy property on site, including slashing tents and tarps, and smashing property before removing it.

116. Defendants throw away things that they unilaterally determine to be garbage or of insufficient value to be stored. Often these items will be taken offsite for disposal.

117. Defendants also frequently gather up all items—mixing actual garbage with personal belongings—and just leave them in a pile.

118. Sometimes Defendants only shift the actual garbage and waste to another area rather than removing it.

119. Defendants conduct these sweeps without warrants to seize and destroy property, or permission from the property owners.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 26

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

120.    Defendants seize and destroy property regardless of whether the owner is present.

121.    Defendants frequently seize property that they know is not abandoned but rather left unattended momentarily while the person living outside attends to other activities or responsibilities.

122.    Many residents ask their neighbors to watch over their belongings when they momentarily step away, but even this will not save their property from destruction. Defendants inform residents that they are not allowed to pack up or save anyone else's belongings once a sweep has begun.

123.    Even an owner's presence may not save the property from destruction.  People have literally wept and begged Defendants not to seize and destroy their property as Defendants seize and destroy it, to no avail.

124.    People living outside are frequently forced to scramble to gather as many of their belongings as possible to prevent the destruction of all of their property.  Defendants seize and often destroy whatever is left, even when they are informed that the owners will return for their items.

125.    Defendants routinely and as an officially sanctioned practice ignore their own policies and procedures for determining whether an item should be held in storage for the owner.

126.    Defendants deny Plaintiffs any opportunity, either before or after the fact, to contest the confiscation or destruction of their property before an impartial decision maker.

127.    Property that is disposed of immediately is impossible to retrieve - often crushed inside a garbage truck.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 27

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

128.    Property that is stored is destroyed after 60 days and impossible to retrieve because Defendants fail to observe appropriate procedures regarding storage of personal property.

129.    For example, Defendants fail to notify people whether their property will be stored, where it will be stored, for how long, or how the property may be retrieved. Defendants' posted notices state only: "THIS IS NOT AN AUTHORIZED AREA FOR STORAGE OR SHELTER.  All material will be disposed of in 72 hours."

130.    On the rare occasion they do provide information regarding storage, Defendants generally only give a phone number, which a person living outside must call to get specific information.  Those living outside who do not have a phone or money to pay for a phone call (or those whose phone and/or money was taken during the sweep) are left without recourse, as are those who cannot read the notice.

131.    Aside from sporadic written notices, Defendants offer zero to minimal information regarding the actual property retrieval process following a sweep.  WSDOT and City employees answering the phone are unwilling or unable to say where items are stored or when they can be picked up.  On at least one occasion, a City employee answering the telephone at the number listed on the notices posted at a sweep site was unable to identify where stored belongings are kept.

132.    Defendants routinely fail to inventory or otherwise keep track of items that are confiscated or destroyed, leaving people with no way of knowing whether their property was even kept.

133.    Defendants impose other barriers to property retrieval as well.  People living outside must find a way to not only get to the facility where items are being stored, but figure out a method to transport any items stored at the facility back to their current place of

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 28

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

residence. The facility where items deemed worthy of storage are kept is at 4200 Airport Way South, approximately an hour walk from downtown Seattle, making it difficult to access without a car from many Seattle neighborhoods, and far away from where a lot of people living outside reside. It becomes even harder to access if Defendants took or destroyed a method of transportation, like a bicycle or bus pass.

134.    The storage facility additionally has limited operating hours, rendering it impractical or impossible for Plaintiffs and other people living outside to retrieve their property, even if they are able to discover whether and where the property is being stored.

135.    In the lucky event someone is able to confirm that their property is being stored and can make it to the facility during operating hours, Defendants may require them to show government identification and describe all the seized belongings. Neither requirement may seem overly onerous on its face, unless the identification is precisely the item that was seized, and until one considers the difficulty of detailing all of one's worldly possessions.

136.    As a result, one worker at the City's storage facility estimates that only 1 or 2 percent of the materials stored are ever picked up, with the rest eventually thrown out. The worker additionally noted that "Obviously, for people that don't have anything, this stuff here [at the storage facility] is their everything." He concluded, "That's very difficult – to throw things away that probably mean something to people is probably the toughest part [of his job]."

137.    Plaintiffs are informed and believe and on such basis allege that at all times relevant to this action, each of the individuals who seized and destroyed their property were the agents, and/or employees of the Defendants and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer, WSDOT or the City.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 29

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**E.**     **Defendants Know Or Should Know That Their Conduct is Unconstitutional and Refuse to Remedy It**

138.     Defendants have been on notice for years that their policy and practice of evicting people living outside from their homes, and intentionally taking and destroying their property violates the U.S. and state constitutions.  They nevertheless persist in violating Plaintiffs' rights.

139.     State and local advocates and organizations have repeatedly warned Defendants of the unconstitutional nature of their conduct.  For example, after a meeting with the City in November of 2015, Columbia Legal Services and the ACLU wrote a letter to the City expressing their concerns that Defendants' current practice and policy violated the Fourth and Fourteenth Amendments of the U.S. Constitution, as well as Washington State law, reminding the City that "[s]weeps conducted with adequate notice to the people living in the identified locations and/or without adequate procedures to safeguard their property violate civil and property rights guaranteed by the constitution."

140.     Defendants' policies and practices have also been condemned by a number of courts.   Most recently, the Ninth Circuit made it explicitly clear that the government cannot "seize and destroy with impunity the worldly possessions of a vulnerable group in our society."  *Lavan v. City of Los Angeles*, 693 F.3d 1022, at 1033 (9th Cir. 2012).  The Court further underscored that "[a]s [the courts] have repeatedly made clear, the government may not take property like a thief in the night; rather it must announce its intentions and give the property owner a chance to argue against the taking.  This simple rule holds regardless of whether the property in question is an Escalade, or [a temporary shelter], a Cadillac, or a cart."  *Id.* at 1032 (internal citations omitted).

141.     The media has amply documented the illegality of the sweeps.  For example, a *Seattle Times* report observed that "sweeps of encampments have been plagued by

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 30

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  disorganization and miscommunication that has often resulted in homeless residents losing

2  their possessions." The report further noted that outreach workers were often not available,

3  showing up after a sweep had taken place or not at all, due to miscommunications between

4  cleanup crews and outreach staff.

5      142.   Even the City's own departments have warned Defendants that their policies

6  and practices are ineffective, inconsistent, and deprive people living outside of effective

7  notice, an opportunity to be heard, or a meaningful opportunity to retrieve their property.

8      143.   For example, on August 31, 2016 the City implemented a Task Force to study

9  the sweeps. Although the Task Force found Defendants' "approach has negatively impacted

10  homeless individuals and neighborhoods," it proffered no solutions.

11      144.   In September 2016, the City hired the Seattle Office of Civil Rights ("OCR")

12  to monitor the sweeps. Monitors regularly reported back to Defendants that the sweeps were

13  traumatizing to observe and that Defendants failed to give appropriate notice of the sweeps.

14  One note from OCR observes "WSDOT a hott [sic] mess!"

15      145.   The Seattle Human Rights Commission also wrote to the Mayor and the City

16  in September 2016, noting that Defendants are "inconsistent in . . . removal and notification

17  procedures," "forcibly displac[ing] individuals from their homes and disconnect[ing] them

18  from their personal property."

19      146.   Defendants have ignored these concerns. For example, despite the "positive

20  impact" the City admits OCR monitors have had, it has transferred on-the-ground oversight of

21  its sweeps to the City's office of Finance and Administrative Services (FAS), with the explicit

22  goal of "operationaliz[ing] and routiniz[ing]" sweeps.

23      147.   As recently as December 23, 2016, the Seattle Human Rights Commission

24  additionally expressed concern with this switch, writing that "[t]he continued presence of

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 31

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

OCR (Office of Civil Rights) monitors is vital to ensuring that encampment sweeps do not further violate encampment residents' civil rights."   The City responded that FAS has demonstrated it performs robust and responsible management of the City's encampment clean-up efforts.

148.   Yet on the day the letter was issued (January 4, 2016), Defendants conducted a sweep without providing residents adequate and effective notice, and despite being informed notice had not been provided, only stopped the sweep after an hour of operating heavy equipment.

149.   Defendants' pattern and practice of behavior coupled with statements by official policymakers and written procedures make clear they will persist in using sweeps without the required constitutional protections, making Plaintiffs only recourse this Court.

**F.    Plaintiffs Have Suffered and are at Continued Imminent Risk of Suffering Irreparable Harm as a Result of Defendants' Actions**

150.   As a direct and proximate result of Defendants' unconstitutional practices and policies, Plaintiffs have suffered and will continue to suffer serious irreparable harm, including but not limited to the destruction of personal property.  Defendants' actions have resulted in the loss of essential personal property for many residents living outside including but not limited to medication, respirators, wheelchairs, canes, blankets, sleeping bags, clothing, tents, tarps, cookware, eating utensils, food, identification, immigration and court documents, and irreplaceable family heirlooms.  The loss of these items is not only an emotional blow, as it would be to anyone, but also threatens the physical safety, health, and well-being of people living outside—particularly in the inclement weather of the Seattle winter.  In many cases, Defendants' actions have deprived people living outside of everything they own.

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

151.    Defendants' actions deprive people of the few possessions they have, forcing them to survive days or weeks after a sweep without medication, shelter, sufficient food, essential hygiene items, and transportation.  Many people lack the resources to replace items destroyed by Defendants.  In the event a person is able to replace items, it takes significant time.  It can take local outreach organizations a year to get someone an ID, and when that ID is taken or destroyed in a sweep, it can take another year to get a replacement.

152.    The sweeps create massive disruption in people's lives; rather than trying to break out of the cycle of homelessness, Defendants' actions force people living outside to spend their time and resources replacing what has been destroyed.  Time that could be spent looking for housing, employment, or accessing medical care is now spent replacing belongings and documents necessary for survival.  That burden is further exacerbated by Plaintiffs' fear that what remaining possessions they have cannot ever be left unattended.

153.    Defendants' actions also have a severe emotional impact.  Much like those whose houses have been destroyed by natural disasters or violated by burglars, people who have their homes swept report feeling degraded, scared, destabilized, anxious, angry, and traumatized.  Those feelings are amplified by the knowledge that the loss was the result of state action sanctioned and approved of by Defendants pursuant to an active and on-going policy without foreseeable end.

154.    In addition to the injuries Defendants' policies and practices inflict on individuals, Defendants have directly and proximately increased the burden on the facilities and services provided by organizations such as the Episcopal Diocese and its member churches and Real Change.  Defendants' unlawful actions have additionally also caused irreparable harm to members of both organizations.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 33

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

155.    The losses and injuries that Plaintiffs have suffered and are at imminent risk of suffering cannot be adequately compensated by monetary damages.

156.    Plaintiffs seek a declaratory judgment that Defendants' policy and practice of confiscating and/or destroying the personal property of people living outside without a warrant, without probable cause, without a meaningful opportunity to reclaim property, and/or without requisite procedural due process is unlawful under the federal and state constitutions.

157.    Plaintiffs further seek appropriate injunctive relief enjoining Defendants' use of sweeps unless and until Defendants have adopted and implemented policies and procedure that ensure that the constitutional rights of people living outside are not violated by the sweeps.

## VI.    CAUSES OF ACTION

### FIRST CLAIM
### Right to Be Secure From Unreasonable Seizures
### Fourth Amendment of the U.S. Constitution

158.    Plaintiffs reallege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

159.    Defendants' policy, pattern, and/or custom of seizing the individual Plaintiffs' property without a valid warrant or probable cause is unreasonable and contrary to the Fourth Amendment of the U.S. Constitution, as applied to the states by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

### SECOND CLAIM
### Right to Privacy and Protection From Invasion of Home
### Article I, Section 7 of the Washington State Constitution

160.    Plaintiffs reallege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 34

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

161.    Defendants' policy, pattern, and/or custom of seizing the individual Plaintiffs' property without a valid warrant are unlawful disturbances of the individual Plaintiffs' private affairs and invasions of their homes, contrary to Article I, Section 7 of the Washington Constitution.

### THIRD CLAIM
**Right to Due Process of Law**
**Fourteenth Amendment of the U.S. Constitution**

162.    Plaintiffs reallege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

163.    Defendants' policy, pattern, and/or custom of seizing and destroying the individual Plaintiffs' property without adequate notice and opportunity to be heard prior to destruction of their property violates the individual Plaintiffs' right to due process of law protected by the Fourteenth Amendment to the U.S. Constitution.

### FOURTH CLAIM
**Right to Due Process of Law**
**Article I, Section 3 of the Washington Constitution**

164.    Plaintiffs reallege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

165.    Defendants' policy, pattern, and/or custom of seizing and destroying the individual Plaintiffs' property without adequate notice and opportunity to be heard prior to destruction of their property violates the individual Plaintiffs' right to due process of law protected by Article I, Section 3 of the Washington Constitution.

///

///

///

///

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 35

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

## VII.    PRAYER FOR RELIEF

2  WHEREFORE, Plaintiffs pray for relief as follows:

3  1.      For declaratory and injunctive relief as the court deems appropriate.

4  2.      For an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

5  3.      For such further relief as is just and appropriate.

6  Respectfully submitted this 19th day of January, 2017.

7
                                  *s/ Emily Chiang*
8                                Emily Chiang, WSBA No. 50517

9                                *s/ Nancy Talner*
                                 Nancy Talner, WSBA No. 11196
10

                                 *s/ Breanne Schuster*
11                               Breanne Schuster, WSBA No. 49993

12
                                 AMERICAN CIVIL LIBERTIES UNION
13                               OF WASHINGTON FOUNDATION
                                 901 Fifth Avenue, Suite 630
14                               Seattle, Washington 98164
                                 Telephone: (206) 624-2184
15                               Email: echiang@aclu-wa.org
                                         ntalner@aclu-wa.org
16                                       bschuster@aclu-wa.org

17

18                               *s/ Todd T. Williams*
                                 Todd T. Williams, WSBA No. 45032
19

20                               CORR CRONIN MICHELSON
                                 BAUMGARDNER FOGG & MOORE LLP
21                               1001 Fourth Avenue, Suite 3900
                                 Seattle, Washington 98154-1051
22                               Telephone: (206) 625-8600
                                 Email: twilliams@corrcronin.com
23

24                               *Attorneys for Plaintiffs*

25

COMPLAINT—CLASS ACTION FOR DECLARATORY AND
INJUNCTIVE RELIEF - 36

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900